[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this foreclosure action in which defendant Lester F. Moreau alleges special defenses and counterclaims, plaintiff moves for summary judgment on its amended complaint, and on defendant's defenses and counterclaims.
The pleadings, affidavits and exhibits reveal the following facts: The amended complain alleges, in essence, on November 19, 1987, defendants Lester S. Moreau and Bernadette A. Swaney executed a promissory note in the face amount of $125,000 and a mortgage on 60 Farm Drive, East Hartford in favor of plaintiff, National Industrial Bank of Connecticut (hereinafter NIB); defendants failed to pay the note in accordance with its terms; plaintiff prays for a foreclosure, deficiency judgment, reasonable attorney's fees. Defendant Moreau's answer denies the default and alleges special defenses in one count and counterclaims in one count, as follows: Defendant Moreau was a vice president of NIB; normal underwriting and closing procedures were not followed in the approval and closing of the $125,000 mortgage loan between NIB and defendants; NIB terminated Moreau's employment; NIB agreed to hold in abeyance all payments due under the mortgage note from August 1988 until the first quarter of 1989; Moreau was unable to cope with the stress of loss of his job and NIB's threat of foreclosure and was admitted to a psychiatric hospital; NIB's demand for payment damaged Moreau's credit; to allow NIB to foreclose would be inequitable; NIB breached its duty of good faith owed to defendants; NIB fraudulently induced defendant to purchase 60 Farm Drive and to execute the $125,000 mortgage note; NIB breached the terms and conditions of the note; the note and mortgage lack consideration; NIB's damages were caused by its own negligence; NIB's acts constituted unfair trade practices. On the counterclaims defendant Moreau prays for money and punitive damages, attorney's fees and cancellation of the mortgage and note.
On March 22, 1990 the Federal Deposit Insurance Corporation (hereinafter FDIC) was substituted as plaintiff in place of NIB as a result of NIB being declared insolvent and the FDIC being appointed its receiver. Thereafter FDIC denied or left defendant Moreau to his proof as to its allegations of Moreau's defenses and counterclaims, and asserted its own special defense that Moreau's counterclaim is barred by D'Oench, Duhme and Co. Inc. v. FDIC, 315 U.S. 447 (1942) and by 12 U.S.C. § 1823(e). CT Page 508
In support of plaintiff's motion for summary judgment, plaintiff submitted an affidavit of an account officer of FDIC that: (1) defendants failed to make principal and interest payments when due; (2) no documents in NIB files evince any modification of the express terms of the note and mortgage; (3) no minutes of NIB's board of directors or its Loan Committee evince any approval of a modification of the note and mortgage. Plaintiff also attached to its motion deposition of defendant Moreau in which Moreau repeatedly acknowledged that any agreement between him and an NIB officer changing the terms of the note and mortgage was done only orally and not in writing.
Defendant Moreau submitted no affidavits or documentary evidence opposing the motion.
The test for granting a summary judgment is that, based on the pleadings, affidavit and other documents offered, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Connecticut Practice Book 378, et seq.; Telesco v. Telesco, 187 Conn. 715, 718
(1982).
The plaintiff has established by its affidavit which is not countervened by Moreau, that defendants have defaulted under the terms of the note and mortgage. Moreau's special defenses and counterclaims can be characterized as claims of promissory estoppel, NIB's breach of an oral agreement to abate payment, breach of NIB's duty of good faith, lack of consideration for the note and mortgage, NIB's fraudulent inducement of the note and mortgage, and finally, taking these acts of NIB together, unfair trade practices.
D'Oench, Duhme Co. v. FDIC, supra, pleaded as a defense by FDIC, involved FDIC suing the makers of notes issued to a bank taken over by the FDIC. The makers of notes issued to a bank taken over by the FDIC. The makers asserted as a defense that the notes lacked consideration because they were given as part of an oral arrangement with the bank that they need not be paid back except from the proceeds of certain bonds in default. The Supreme Court held that defense to be unfailing because the arrangement was "designed to deceive the creditors or the public authority, or would tend to have that effect." 315 U.S. at 460. In what has become known as the D'Oench, Duhme Doctrine, the court asserted that the provision of the Federal Reserve Act,12 U.S.C. § 264(s) "reveal a federal policy to protect respondent [FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insured or to which it makes loans." 315 U.S. at 457. CT Page 509
Since 1942, the D'Oench, Duhme Doctrine has been recognized and consistently applied by the courts to bar defenses, claims or counterclaims asserted against the FDIC which are premised on unrecorded agreements or implied agreements based on representations or conduct between a bank and its customers which alter the express terms of official bank records. It is held to be immaterial that the borrower may have acted in good faith or that FDIC had actual knowledge of the deception. Beighley v. FDIC, 868 F.2d 776, 784 (5th Cir. 1989). Defenses, claims or counterclaims barred by the Doctrine included, in addition to failure of consideration, D'Oench, Duhme supra, promissory estoppel, breach of fiduciary duty, breach of duty of good faith and fair dealings (Bowen v. FDIC, 915 F.2d 1013
(5th Cir. 1990; Beighley v. FDIC supra); estoppel (FSLIC v. Locke 718 F. Sup. 573 (W.D.Tex. 1989)); unfair trade practices (Yankee Bank for Finance Savings, FSB v. Task Associates, 1989 U.S. Dist. Lexis 9159 (N.D.N.Y. 1989)), and all unwritten and unrecorded promises and conditions related to the signing of the note. (Estate of Rains v. FDIC, 702 F. Sup. 1520
(D.Kan. 1988)).
The rationale for the Doctrine is expressed in Bowen v. FDIC supra 915 F.2d at 1016, as follows:
 "Fundamentally, D'Oench attempts to ensure that FDIC examiners can accurately assess the conditions of a bank based on its books. The doctrine means that the government has no duty to compile oral histories of the bank's customers and loan officers . . . ."
 "Unrecorded agreements — those rooted in the loosed soil of casual transactions as much as those that spring from the malodorous foam of outright fraud — are a threat to the ecology of the banking system that we can ill-afford . . . . . Those who till these soils may not shift the cost of their peculiar agronomy to the FDIC, the bank's depositors and unsecured creditors, and the taxpayers and depositors who fund the FDIC."
Moreover, defendant's special defenses and counterclaims do not meet the stringent requirements of 12 U.S.C. § 1823(e) which provides:
 No agreement which tends to diminish or defeat the interest of the [FDIC] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan CT Page 510 or by purchase or as receiver of any insured depository institution shall be valid against the [FDIC] Corporation unless such agreement (1) is in writing (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.
The Supreme Court has given an expansive definition to the "agreement" requirement of 12 U.S.C. § 1823(e). In Langley v. FDIC 484 U.S. 86 (1987) the court equated "agreement" with any conduct, scheme or arrangement whereby the banking authority may be misled. 484 U.S. at 92.
In this case defendant is attempting to diminish or defeat the interest of the FDIC in foreclosing on an asset that FDIC acquired as receiver. He has not established that the representations and conduct by former NIB officials asserted as the bases of his special defense and counterclaim are (1) in writing; (2) executed by NIB officers; (3) were approved by NIB board of directors or its loan committee, as reflected in minutes of the board or committee; and (4) have been a continuous record of NIB. Failing to meet these requirements of12 U.S.C. § 1823(e), defendant is barred from asserting his defense and counterclaim. Langley v. FDIC, supra,484 U.S. at 95.
Finally, defendant asserts the defense that it would be inequitable for this court to allow plaintiff to foreclose in light of Moreau's mental and physical disabilities and the loss of his job with NIB. The Supreme Court in Langley expressly refused "to engraft an equitable exception upon the plain terms of the statute [12 Section 1823(e)]." 484 U.S. at 94. Other federal cases have held that the statute effectively eliminates any discretion the court might otherwise have "to balance the equities and determine whether or not an agreement can be inferred." FDIC v. Manatt, 688 F. Sup. 1327, 1329 (E.D.Ark. 1988) FDIC v. TWT Exploration Co., 626 F. Sup. 149, 152 (W.D.Okla. 1985).
Finding no genuine issue of fact, this court grants plaintiff's motion for summary judgment in plaintiff's favor on plaintiff's amended complaint and on defendant's special defense CT Page 511 and counterclaim.
R. SATTER STATE TRIAL REFEREE